DREVIS, Respondent, vs. WOODS and another, Appellants.

*March 2 — March 27, 1888.*

*Court and jury: Contributory negligence.*

1. In this action to recover the value of grain alleged to have been
   burned through defendants' negligence while they were threshing
   for the plaintiff with a steam-thresher, it is *held* that the evidence
   does not clearly show that the plaintiff was guilty of contributory
   negligence in permitting the defendants to continue threshing
   under the circumstances, and that the question was therefore prop-
   erly submitted to the jury.
2. Where a statement made by one of the defendants to the plaintiff
   was of importance in determining the question of contributory
   negligence, and the language used, as testified to by the plaintiff,
   might have more than one meaning, it was error for the court, in
   charging the jury, to say what he supposed the defendant meant.

APPEAL from the Circuit Court for *St. Croix* County.
The following statement of the case was prepared by Mr.
Justice TAYLOR as a part of the opinion:

Action to recover the value of some barley which was
burned by sparks escaping from an engine used by the de-
fendants. The evidence shows that at and before the time
the fire occurred the defendants were threshing grain with
a steam-threshing machine on the premises of the plaintiff,
and for him; that when the fire caught, and for some time
previous, the wind blew briskly from the direction of the

engine towards a stack or stacks of unthreshed barley, standing about seventy-five feet from the engine; that a fire was kindled in said barley from the sparks emitted from the smoke-stack of said engine, and the barley was destroyed. About these facts there is no dispute. About other matters the evidence is conflicting. On the part of the plaintiff it is claimed that he was entirely ignorant as to the dangers likely to result from the use of the steam-engine in the vicinity of the stacked grain, and he claims that he was informed by one of the defendants, before the threshing commenced, that the threshing could be done in the barn without setting it on fire. This is denied by the defendants. The defendants claim that, shortly before the fire occurred, they warned the plaintiff that it was danger-ous to continue threshing with the wind blowing towards the stacks, and that the plaintiff was anxious they should continue the work and finish up the job as soon as possible. This the plaintiff denies, and claims that nothing was said to him by the defendants or any other person as to the danger of continuing the work. There is also a conflict of evidence as to the quality of the wood provided by the plaintiff; the defendants claiming that he was to provide good, sound wood, and that the wood he in fact provided was unsound and rotten, and caused more sparks and fire to be emitted from the smoke-stack, and so increased the danger. On the part of the plaintiff it is claimed that the wood furnished was good, sound wood. Evidence was also given on the part of the plaintiff tending to show that there was a sprinkler attached to the engine, which, when kept in use, had the effect of greatly lessening the quantity of sparks emitted from the smoke-stack, and so lessening the danger therefrom; that this sprinkler was not used at and before the time the fire was kindled in the barley stacks, and that the reason given by the defendants for not using it was be-cause it took a large quantity of water to run it. On the

part of the defendants it was claimed that the reason it was not used was because the quality of the wood furnished was such that they could not get up sufficient steam to run the machine and keep the sprinkler in use at the same time. There was also some evidence in the case tending to show that the defendants, after the fire, promised to pay the damage done, by threshing in the future for the plaintiff, and which they afterwards refused to do.

The case was submitted to the jury, who, under the direction of the court, found a special verdict, by which they found, among other things, "that the plaintiff did not know that it was dangerous to thresh on that day;" "that the defendants, prior to the fire, did not notify the plaintiff that it was dangerous to thresh on that afternoon;" "that neither the plaintiff nor any of his workmen objected to threshing on that day;" "that the wood furnished by the plaintiff was a good, fair quality;" "that the plaintiff was not guilty of any want of ordinary care in any way which contributed to the accident;" and "that the defendants were guilty of want of ordinary care in threshing, on the occasion of the accident, and that such want of ordinary care caused the fire." Upon the special verdict, judgment was rendered in favor of the plaintiff for the value of the barley burned.

The defendants appeal from such judgment, and allege as errors (1) "that the court should have nonsuited the plaintiff, as requested by them at the close of the evidence; (2) that the court erred in refusing to direct a verdict for the defendants upon the whole evidence, as requested by them; (3) that the court erred in submitting the question of the plaintiff's negligence or want of ordinary care to the jury; (4, 5) that the court erred in his charge to the jury, and in refusing to charge the jury as requested by the defendants; (6, 7) that the verdict is contrary to the law and the evidence.

*J. B. Smith*, for the appellants.

For the respondent there was a brief by *Smith & Vannatta*, and oral argument by *Mr. C. Smith*.

TAYLOR, J. The questions whether the plaintiff should have been nonsuited at the close of his evidence, or whether a verdict should have been directed for the defendants at the close of the evidence, depend wholly upon the question whether the evidence, as a matter of law, showed that the plaintiff was guilty of negligence in permitting the defendants to continue threshing, under the circumstances detailed in the evidence. That there was sufficient evidence to justify a jury in finding the defendants guilty of negligence in continuing the threshing, under the circumstances, is not denied by the counsel for the appellants, and no exception is taken to the court's submitting that question. The evidence of the appellants themselves shows their negligence, and the only way they pretend to justify themselves in continuing the work as they did is by alleging that the respondent directed them to do so after they had informed him of the danger. This was denied by the respondent, and the jury found that they did not so inform him. After a careful consideration of all the evidence in the case, we think it does not clearly show that the respondent was guilty of a want of ordinary care on his part which contributed to the accident; and that question was therefore properly submitted to the jury. To justify a court in directing a verdict for the defendants on the ground that the plaintiff is shown to have been guilty of negligence which contributed to the accident, it must appear that the evidence, giving it the most favorable construction for the plaintiff, still shows such want of ordinary care on his part. We do not think the evidence in this case, so construed, necessarily establishes the fact of the plaintiff's negligence.

This question of the contributory negligence of the plaint-

iff being the most important question in the case, and the one involving the most doubt upon the evidence, it was highly important that upon that question the learned circuit judge should have avoided, in his instructions to the jury, any statement, not clearly warranted by the evidence, which might influence them in determining that question. One of the questions submitted to the jury bearing directly upon the plaintiff's negligence was as follows: "Did the plaintiff know it was dangerous to thresh on that day?" It would seem, as a matter of course, if he knew it was dangerous and still permitted the threshing to continue without objection, and without being misled by any assurance to the contrary coming from the defendants, he would be held to have assumed the risks of such danger, and so have been held to a want of ordinary care on his part. In submitting this question to the jury, the learned circuit judge said: "That question I leave for you to answer yes or no; and that involves, perhaps, a consideration of some other circumstances, and I may as well call attention to that now. (He claims here that he was informed by the defendants, some one, two, or three days before, that they could thresh in the barn without setting it on fire; by which, I suppose, he meant to be understood there was no danger of setting fire from the engine.) (Now, that is a circumstance, if the plaintiff here, ignorant of the peculiar qualities of this machine, and not an expert, perhaps,— not shown to be in the threshing business,— might perhaps very properly have relied on that statement.) That is one fact and circumstance, if you find that it is so, to be taken into consideration in passing on that question. Now, I think, had he known about that machine,— known that sparks would fly out of it,— and could see for himself that the wind was blowing from the engine down onto the stacks, and unless he had the information that these defendants must have had as owners of that machine, I think that he should have known

that it was dangerous to thresh on that day. (I will leave this question to you, in view of the fact that there are some circumstances claimed here to show that the plaintiff was misled, perhaps, by the remarks of the defendants and his own ignorance of the qualities of that particular engine, and not being an expert in threshing.) It is question of fact for you to determine whether the plaintiff knew it was dangerous to thresh on that day." Those parts of these instructions inclosed in the parentheses were excepted to by the defendants. The first paragraph refers to some evidence given by the plaintiff himself on the trial, and, after stating the substance of that evidence, the court adds: "By which, I suppose, he meant to be understood there was no danger of setting fire from the engine." In the last clause of the paragraph, the learned judge assumes to give the jury the meaning of the evidence given by the witness We think this was error. It seems to us it was for the jury to say, and not the court, what the meaning of the language used by the defendant, as testified to by the plaintiff, was. The plaintiff was the only witness who testified as to what one of the defendants said as to threshing in or near the barn. On his direct examination he states it as follows: "While we were threshing near the barn I had a conversation with *Mr. Woods.* I asked him if there was any danger near the barn. He told me, 'Don't be afraid.' He said he would thresh right in the barn, and not be afraid of fire." On cross-examination he testified: "*Mr. Woods* told me before, when threshing by the barn, there was no danger; he threshed right in the barn." Again he said: "Up at the barn, I asked *Mr. Woods* if there was any danger on account of — you know we had threshed near the barn — about fire. He said, 'Oh, don't be afraid. I would thresh right in the barn, and would not be afraid it would catch fire.'" We do not think this statement of the defendant *Woods*, as detailed by the plaintiff, is susceptible of but one meaning,

viz., that there was no danger of setting fire from the engine. It was for the jury, therefore, and not for the court, to say what the meaning of the language used was.

It cannot be said that the explanation given to the jury by the court of the words alleged to have been used by the defendant *Woods* was of little importance in the case. The learned judge was clearly of the opinion that they were of the highest importance in coming to a correct answer to the question above stated; and he strongly intimates, in the other part of his instructions upon this question, that they should find that the plaintiff did know it was dangerous to thresh under the circumstances, had it not been for the fact that the defendant *Woods* had made the statement in regard to the safety of using the machine which the plaintiff insisted he had made. Again, in instructing the jury upon the eighteenth question submitted to them, viz., " Was the plaintiff guilty of any want of ordinary care, in any way, which contributed to the accident?" the learned judge again calls the attention of the jury to this alleged statement of the defendant *Woods* to the plaintiff, as having a direct bearing upon the question of the plaintiff's negligence. In these instructions the learned judge says: " Of course you will take into consideration what had been said to him there by the defendants as to what they could do, if they find anything was said as to the condition of the engine and what they were to do without danger." This last instruction is not cited for the purpose of showing that there was any error in giving it in the form last above stated, but for the purpose of showing the prominence which was given to the fact that such a statement was made by the defendant to the plaintiff, as bearing upon the determination of those questions. Any improper instruction, therefore, by the learned circuit judge as to the meaning which the jury ought to give the language alleged to have been used by

the defendant, must be held a prejudicial error and cause a reversal of the judgment.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

See note to this case in 37 N. W. Rep. 256.— REP.